## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## NORTHERN DIVISION

| | |
|---|---|
| **RONALD J. GARDNER,** | |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER** |
| **vs.** | **Case No.  1:14cv125DAK** |
| **UNITED STATES OF AMERICA; DELTA AIR LINES, INC,; and DOES 1-10,** | **Judge Dale A. Kimball** |
| **Defendants.** | |

This matter is before the court on Defendant United States of America's Motion to Dismiss and Defendant Delta Air Lines, Inc.'s Motion to Dismiss.  On April 8, 2015, the court held a hearing on the motions.   At the hearing, Plaintiff was represented by Charles W. Dahlquist, II, and James T. Burton, the United States of America was represented by John K. Mangum and Amanda A. Berndt, and Delta Air Lines was represented by Gainer M. Waldbillig. The court took the matter under advisement.  The court has considered carefully the memoranda submitted by the parties and the law and facts relating to the motions.  Now being fully advised, the court issues the following Memorandum Decision and Order.

### BACKGROUND

On January 20, 2011, Gardner was a first class passenger on a Delta flight from Washington D.C., to Salt Lake City, Utah.  Gardner is legally blind and walks with a white cane. Nonetheless, he is a seasoned air traveler and a member of Delta's Diamond Medallion frequent flier club, which requires 125,000 miles flown each year.

During the flight, Plaintiff attempted to recline his seat three times and had it jolted forward each time by the passenger sitting behind him.  Plaintiff left his seat to speak to a Delta flight attendant about the situation.  As he was returning to his seat, the passenger seated behind him began to verbally abuse him.

Later in the flight, the lead flight attendant informed Gardner that the passenger seated behind him was a federal air marshal.  This information cased Gardner anxiety.  Gardner was fearful that the federal air marshal would be able to cause him harm during the flight and, even after the flight had landed, find his home and family to continue to harass him.  Because of his anxiety, Gardner began to shake uncontrollably.

As the end of the flight approached, the lead flight attendant told Gardner that he would personally accompany him to the airport's exit.  The flight attendant instructed Gardner to wait in his seat until the entire first class cabin deplaned and he could return to escort Gardner.  The first class cabin deplaned, but the flight attendant did not return.  Gardner believed that it was clear that the flight attendant was not going to help him as promised and attempted to exit the cabin on his own.  The first class cabin was in front of the plane's exit.  As Gardner attempted to exit the cabin, the federal air marshal, who had been seated behind Gardner, stood and blocked the aisle. Gardner let out a scream and asked, "What is he doing here?"  From behind him, in the area next to the cockpit, the lead flight attendant stated, "Well I guess he has as much right to get off the plane when he wants as anyone else." Gardner believes that the lead flight attendant had been in the first class cabin the entire time Gardner had sat and waited and had intended for Gardner to be forced to sit and wait.

Gardner again attempted to leave the plane but the federal air marshal would not move out of the aisle.  Despite repeated requests for the air marshal to move, he remained in place and

blocked Gardner's exit from the plane.  All of this occurred in the view of the lead flight attendant.  Only after the air marshal was distracted by an airport employee, who arrived to escort Gardner out of the airport, was Gardner able to get by the air marshal and exit the plane.

As Gardner left the plane and began heading to the airport exit, the federal air marshal continued to follow Gardner and harass and intimidate him.  Gardner attempted to discuss the matter with the captain of the flight but the air marshal continually interrupted him.  The captain disregarded Gardner's concerns and stated, "Ah, you'll be okay."  When Gardner asked the captain to order the federal air marshal to leave him alone, the captain only responded by saying, "I'm sure you'll be okay."  Gardner contends that the captain should have referred Gardner, a disabled passenger, to a Delta Complaint Resolution Officer ("CRO"), who was specifically trained and aware of Federal Aviation Administration disability regulations. The federal air marshal continued to follow Gardner through the airport.  Gardner states that he had to hurry to another exit of the airport to evade the air marshal.

Since the flight, Gardner alleges that he has suffered from post-traumatic stress disorder, anxiety, depression, difficulty breathing, periodic anxiety-related loss of the remaining vision Gardner possesses, panic attacks, and fear of public places.  Gardner has also suffered from insomnia, sexual dysfunction, and recurrent nightmares.  Gardner has further lost his employment and suffered a loss of enjoyment of association with family and friends.

Plaintiff brought this action against the United States and Delta, asserting the following claims: (1) doctrine of respondeat superior against all Defendants; (2) negligence against the United States; (3) negligence against Delta; (4) intentional infliction of emotional distress against all Defendants; (5) negligent infliction of emotional distress against all Defendants; (6) false imprisonment against all Defendants; (7) assault against the United States; (8) breach of duty of

common carrier to disabled passenger against Delta; (9) violation of Air Carrier Access Act against Delta; (10) breach of duty towards business visitor against Delta.

## DISCUSSION

Delta moves to dismiss the eight causes of action Gardner asserts against it, contending that all of the causes of action are improperly supported by legal conclusions instead of well-pleaded facts. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bel Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The United States similarly moves to dismiss the six causes of action Gardner asserts against it because the Complaint fails to allege conduct by a federal actor with enough specificity to make liability plausible and fails to allege required elements for each tort claim. Gardner opposes both motions. However, Gardner agrees to withdraw his cause of action for false imprisonment against Delta and his cause of action under the Air Carrier Access Act.

## <u>Delta's Motion to Dismiss</u>

Delta asks this court to dismiss each of Gardner's causes of action. Gardner opposes the motion, however, arguing that he has met the pleading requirements for each cause of action.

## 1. Intentional Infliction of Emotional Distress Claim

To state a claim for intentional infliction of emotional distress under Utah law, Gardner must allege facts demonstrating that Delta: "intentionally engaged in some conduct toward the plaintiff (a) with the purpose of inflicting emotional distress, or (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality." *Bennett v. Jones, Waldo, Holbrook & McDonough*, 70 P.3d 17, 30 (Utah 2003). Outrageous conduct "must evoke outrage or revulsion; it must be more than unreasonable, unkind, or unfair." *Franco v. The Church of Latter-Day Saints*, 21 P.3d 198, 206

(Utah 2001).

Gardner argues that when he alerted the flight attendant to the air marshal's abuse, the flight attendant assured Gardner that he would accompany him to the airport's exit, instructed him to wait in his seat until he could be escorted, and then never came.  Gardner claims that the flight attendant intentionally left him alone in the first class cabin with the federal air marshal and, when the air marshal blocked Gardner's path, he failed to intervene.  In addition, when Gardner asked the Delta pilot for help, he offered no assistance other than to state that Gardner would be okay even though the air marshal was interrupting Gardner and continued to follow Gardner and harass him.  Given his disability, Gardner contends that Delta's flight attendant and pilot acted with the purpose of inflicting emotional distress upon Gardner.

Gardner was being harassed and abused by the very passenger tasked with keeping the flight safe, and Gardner alleges that not only did Delta do nothing to stop it, the flight attendant purposefully left Gardner alone with the air marshal after the attendant knew of the abuse and harassment and after all the other passengers had left the first class section.  This alleged conduct, in light of Gardner's inability to protect himself, could prove to be extreme, outrageous, and intolerable. The court recognizes that this is a difficult case because Gardner's disability made it hard for him to see what was actually happening and some of his allegations are based on Gardner's speculations as to why the flight attendant did not escort him from the plane. Nonetheless, on a motion to dismiss, the court must accept Gardner's facts as true and view any inferences from those facts in a light most favorable to Gardner.   The court concludes that there are enough alleged facts at this stage of the litigation for the claim to survive.

## 2.  Respondeat Superior

Gardner's respondeat superior cause of action alleges that Delta is liable for all of its

5

employees' actions without regard to the cause of action or allegations.  In order to establish that a corporation is responsible for the torts of its employees, a plaintiff must plead facts which reflect that the tort is within the scope of employment.  *Birkner v. Salt Lake Cnty*, 771 P.2d 1053, 1056 (Utah 1989).  To plead that actions were within the scope of employment, a plaintiff must allege facts that: "(1) the employee's conduct must be of the general kind the employee is employed to perform; (2) the employee's conduct must occur within the hours of the employee's work and the ordinary spatial boundaries of the employment; and (3) the employee's conduct must be motivated, at least in part, by the purpose of serving the employer's interest."  *D.D.Z. v. Molerway Freight Lines, Inc.*, 880 P.2d 1, 4 (Utah Ct. App. 1994).

Delta argues that Gardner does not allege, nor could he in good faith allege, that the intentional acts of purposeful infliction of emotional distress were of the kind generally performed in the scope of Delta's employees' employment.  Gardner contends, however, that Delta's flight attendant was providing services usually offered, it occurred during the hours of his employment, and his conduct was motivated, at least in part, to serve Delta's purposes. However, conduct that is "highly unusual and quite outrageous," is "considered outside the scope of employment."  *Birkner,* 771 P.2d at 1057.  Therefore, the kind of outrageous conduct required for intentional infliction of emotional distress is outside the scope of employment. Accordingly, to the extent that Gardner can prove a claim of intentional infliction of emotional distress against a Delta employee, such conduct would be outside the scope of that employee's employment and Delta would not be liable under respondeat superior.

### 3.  Negligent Infliction of Emotional Distress

In addition to his intentional infliction of emotional distress, Gardner has similarly pleaded a claim for negligent infliction of emotional distress.  Negligent infliction of emotional

6

distress is not merely a lesser form of intentional infliction of emotional distress.   Utah law

recognizes a claim of negligent infliction of emotional distress when a defendant unintentionally

causes emotional distress to another, should have realized the conduct involved an unreasonable

risk of causing distress, and should have realized that the distress might result in illness or bodily

harm. *Harnicher v. University of Utah Med. Ctr.*, 962 P.2d 67, 69 (Utah 1998).  "The emotional

distress suffered must be severe; it must be such that a reasonable [person,] normally constituted,

would be unable to adequately cope with the mental stress engendered by the circumstances of

the case." *Id.*

Gardner alleges that Delta negligently left him alone with the air marshal, after knowing

that he was being harassed and abused by the air marshal.  Gardner was so fearful of the air

marshal that when he discovered that he was alone with the air marshal in the first class section,

he screamed.  However, Gardner alleges that rather than help him, the flight attendant's only

response was to state that the air marshal had a right to exit the plane as well.  Gardner asserts

that Delta's failure to help him resulted in his post-traumatic stress disorder, anxiety, depression,

difficulty breathing, periodic loss of his remaining vision, panic attacks, fear of public places,

insomnia, nightmares, and sexual dysfunction.  Accepting Gardner's factual allegations as true

and giving Gardner all favorable inferences from those facts, the court concludes that Gardner's

allegations are sufficient to state a claim for negligent infliction of emotional distress at the

motion to dismiss stage.

## 4.  Negligence

Gardner claims that Delta had an affirmative duty to provide him with an abuse-free and

safe trip, but it breached its duty to him by failing to prevent the air marshal from assaulting and

harassing him.  Gardner claims that if the abusive behavior had occurred by any passenger other

than the air marshal, Delta would have made an emergency landing and required the offender to exit the plane.  Gardner further asserts that Delta breached its duty of care to him when the flight attendant instructed him to stay on the plane until all other first-class passengers had deplaned, by not intervening when the air marshal blocked his exit, and by not preventing the air marshal from following Gardner through the terminal.

Delta's motion only focuses on the causation and damages elements of a negligence claim.  With respect to causation, Gardner need only show that Delta's act or failure to act produced the harm directly or set in motion events that produced the harm in a natural and continual sequence.  Gardner would not have remained in the first class cabin alone with the federal air marshal if the flight attendant had not told him to wait for the other first-class passengers to deplane.  But for Delta asking Gardner to wait, Gardner could have left with the other passengers.  Also, had Delta fulfilled its duty to a disabled passenger being harassed and provided assistance and protection, the air marshal would not have been able to continue to harass and stalk Gardner through the terminal.  These allegations are sufficient to establish causation.

With respect to damages, Gardner has pleaded that Delta's actions are a partial cause of his damages.  It is immaterial for purposes of evaluating a motion to dismiss that the air marshal may have also caused similar or identical damages.  The only relevant allegation is that the damages occurred because of Delta's actions or inaction.  The court concludes that Gardner's allegations are sufficient to withstand a motion to dismiss.

For these same reasons, Gardner's claims for breach of common carrier duty and breach of duty to a business visitor are sufficient to withstand a motion to dismiss for the same reasons.

**5. Attorney Fees**

Delta argues that Gardner has not pleaded a basis for obtaining an award of attorney fees in this tort action. Although a district court has the ultimate discretion in awarding fees, there must be some basis for the award. Gardner pleads no statutory or contractual basis for overcoming the ordinary American rule that each party pays its or his own attorney fees. Because Gardner provides no statutory or contractual right to attorney fees, attorney fees are not available.

**6. Special Damages**

Federal Rule of Civil Procedure 9(g) states that "if an item of special damage is claimed, it must be specifically stated." This requirement is essential to allow a defendant to respond as "[s]pecial damages depend on particular circumstances of the case; general damages, on the other hand, are the ordinary result of the conduct alleged." *Weyerhaeuder Co. v. Brantley,* 510 F.3d 1256, 1266 (10th Cir. 2007). Gardner has only referred to special damages in his prayer for relief. He does not link the prayer for relief to any cause of action or identified any specific special damages. Gardner requests that the court grant him leave to amend his prayer for relief to specifically identify his special damages. Although Gardner did not file a formal motion to amend, in its discretion, the court allows Gardner twenty days from the date of this Order to file an Amended Complaint alleging specifically identified special damages.

<u>**United States's Motion to Dismiss**</u>

Gardner's claims against the United States are brought under the Federal Tort Claims Act ("FTCA"), and both parties agree that such claims are governed by Utah law.

**1. Negligence Claims**

The United States argues that Gardner's general negligence claims must be dismissed

because he has alleged no physical or other injury independent of his emotional distress.  If a plaintiff alleges only emotional distress, he has not stated a claim for general negligence in Utah. Instead, such allegations support a claim for the tort of negligent infliction of emotional distress. *Johnson v. Rogers*, 763 P.2d 771, 779 (Utah 1988).  The United States claims that Gardner has only pled emotional distress, which subsequently brought on physical symptoms and economic injury.  The few types of physical harm Gardner lists–temporary uncontrollable shaking, difficulty breathing, temporary loss of vision, loss of employment, and sexual dysfunction–are all physical manifestations of his emotion distress rather than independent physical harm.

The United States contends that because Gardner complains only of the infliction of emotional distress, no part of this case should be analyzed under general negligence principles. because they are duplicative of or subsumed by his negligent infliction of emotional distress claim.  However, Gardner is not required to plead a physical, non-emotional injury to state a negligence claim.  Plaintiffs routinely assert alternative causes of action based on the same set of facts.  Moreover, Gardner claims that the United States breached its duty to train federal air marshal's not to assault and verbally abuse passengers.  Such a claim for negligence is separate and distinct from the emotional distress claim.  Discovery will clarify the scope of Gardner's claims.  At the motion to dismiss stage the court concludes it would be inappropriate to dismiss Gardner's general negligence claim.

**2.  Negligent Infliction of Emotional Distress**

Next, the United States argues that Gardner's claim for negligent infliction of emotional distress should be dismissed because he has not alleged any conduct of the type that is likely to cause severe and unmanageable mental distress in a reasonable person who is normally constituted.     An actor is subject to liability only if he engages in conduct "of the type that is

likely to cause severe and unmanageable mental distress in a reasonable person normally constituted." *Harnicher v. University of Utah Med. Ctr.*, 962 P.2d 67, 72 (Utah 1998). The law of negligent infliction of emotional distress is not intended to "give protection to mental and emotional tranquility in itself." *Id.* at 70. It is to apply only to conduct of the type that causes severe distress in a normal, reasonable person.

The United States claims that the air marshal's jolting of the seat, abusive comments, blocking of his path, interrupting him, and following him through the airport does not reach the level of distress required for such a claim. However, the United States does not view the allegations of the Complaint in the light most favorable to Gardner. The United States refers to the air marshal as standing in Gardner's way, but Gardner alleges that despite repeated requests and a scream of fright, the air marshal continued to block Gardner's only way off the plane. While Gardner does not allege specific abusive comments made by the air marshal, the conduct is unusual and exceptional in light of Gardner's disability. Given his blindness, Gardner was particularly susceptible to fear and uncertainty of his surroundings after the original assault.

The alleged abusive behavior is also highly irregular in that it was not an isolated event. The alleged harassment occurred early in the flight, at the end of the flight, as the parties had exited the flight, and throughout the terminal. Although it may not be too uncommon for a single jolting of the seat or a single comment to be made in regards to someone trying to recline a seat, the court must consider the cumulative impact and persistence of the alleged harassment. At the motion to dismiss stage, the court cannot conclude that Gardner's allegations fail to state a claim as a matter of law.

### 3. Intentional Infliction of Emotional Distress

As stated above, intentional infliction of emotional distress requires actions "of such a

11

nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality." *Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, 70 P.3d at 30.  Outrageous conduct "must evoke outrage or revulsion; it must be more than unreasonable, unkind, or unfair." *Franco*, 21 P.3d at 207.  Thus, "liability for intentional infliction of emotional distress clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Bennett*, 70 P.3d at 32. Conduct "is not necessarily outrageous merely because it is tortious, injurious, or malicious, or because it would give rise to punitive damages, or because it is illegal." *Franco*, 21 P.3d at 207.  Conduct is only outrageous if it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *White v. Blackburn*, 787 P.2d 1315, 1317 (Utah Ct. App. 1990).

As with the claim for intentional infliction of emotional distress against Delta, the court concludes that it would be improper prior to discovery to rule as a matter of law that the alleged conduct was not outrageous and offensive to general standards of decency and morality.  The court concludes that Gardner has pleaded enough facts to allow the claim to go to discovery.

**4.  Assault**

The Untied States further argues that Gardner does not identify which of the air marshal's alleged actions constituted assault and Gardner cannot state a claim for assault by generally referring to all of the alleged conduct that happened over the course of several hours.  Under Utah law, "[a]n actor is subject to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other . . . , or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." *Tiede*, 915 P.2d at 503 n.3.

The United States argues that Gardner has not pleaded that he anticipated that his seat

would be jolted before it was any of the three times that it happened and, thus, Gardner cannot

plausibly plead that he feared the jolting ahead of time in order to state a claim for assault.

However, Gardner clearly alleges that he was subjected to multiple joltings of his seat, degrading

and abusive language, and being physically confined by the air marshal in the first class cabin.

Each of the actions in itself could constitute an assault under Utah law.  Moreover, Gardner's

Complaint sufficiently alleges apprehension and fear of the air marshal.  The court, therefore,

concludes that Gardner has sufficiently pleaded a claim for assault against the United States.

### 5.  False Imprisonment

The United States also alleges that Gardner cannot state a claim for false imprisonment

because there is no allegation of complete confinement because the confinement must be

complete and Gardner admits that he was eventually able to get by the air marshal when the

airport escort arrived.  However, the fact that Gardner was able to get by the air marshal when the

airport escort came does not change the fact that he was completely confined for a period of time.

Despite repeated requests, Gardner alleges that the air marshal would not move out of the aisle.

The United States suggests that Gardner, despite his legal blindness, could have climbed

over the seats to get out of the cabin.  The law is clear that confinement is not complete if there is

a perfectly safe avenue of escape, even if taking it entails a slight inconvenience.  Given

Gardner's disability and prior to any discovery on the issue, the court cannot rule as a matter of

law that climbing over the seats safe avenue for Gardner.  Moreover, Gardner argues that he was

too fearful of the marshal by that point of the flight to try to physically push by him.  These types

of factual issues preclude a ruling at the motion to dismiss stage.

### CONCLUSION

Based on the above reasoning, Defendant Delta Air Lines's Motion to Dismiss is

GRANTED IN PART AND DENIED IN PART and Defendant United States's Motion to

Dismiss is DENIED.

DATED this 18th day of June, 2015.

BY THE COURT:

DALE A. KIMBALL,
United States District Judge